UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 24-10966 JGB (DTBx)**<br>**EDCV 24-2685 JGB (DTBx)** | Date | July 9, 2026 |
|---|---|---|---|
| Title | *Abel Soto v. Los Angeles Sheriff's Department, et al.*<br>*Jofama Coleman, et al. v. Los Angeles Sheriff's Department, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:      Order (1) GRANTING Defendants' Motion to Consolidate (Coleman Dkt. No. 80); (2) DENYING Defendants' Motions for Judgment on the Pleadings (Soto Dkt. No. 66; Coleman Dkt. No. 79); and (3) VACATING the July 22, 2026, and July 13, 2026, Hearings (IN CHAMBERS)**

Before the Court are various motions filed by Defendants County of Los Angeles ("LA County"), Los Angeles County Sheriff's Department ("LASD"), Stephen Katz, Danny Smith, Michael Valento, Mark Lillienfeld, Cynthia Valencia, Norman Campbell, and Daniel Rosenberg ("Defendants") in CV 24-10966 ("Soto") and EDCV 24-2685 ("Coleman"). First, in Coleman, Defendants move for consolidation of the two actions. ("Consolidation Motion," Coleman Dkt. No. 80.) Defendants also move for judgment on the pleadings. ("Coleman MJP," Coleman Dkt. No. 79.) In Soto, Defendants similarly move for judgment on the pleadings. ("Soto MJP," Soto Dkt. No. 66.)

The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the motions, the Court **GRANTS** the Consolidation Motion, and **DENIES** the Coleman MJP and Soto MJP. The July 13, 2026, and July 22, 2026, hearings are **VACATED**.
//
//
//
//
//
//

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk mg

# I. BACKGROUND

On December 20, 2024, Plaintiffs Jofama Coleman ("Coleman") and Jocelyne Coleman ("Jocelyne[1]") filed a complaint alleging civil rights claims against Defendants. ("Coleman Compl.," Coleman Dkt. No. 1.) At the same time, Plaintiff Abel Soto filed a complaint also alleging civil rights claims against all Defendants except Campbell and Smith. ("Soto Complaint," Soto Dkt. No. 1.) Both complaints (together, "Complaints") raise the same five claims: (1) violation of the Fourteenth Amendment right to due process and a fair trial under 42 U.S.C. § 1983; (2) violation of the Fourth Amendment for seizure without probable cause under 42 U.S.C. § 1983; (3) failure to intervene under 42 U.S.C. § 1983; (4) conspiracy to deprive constitutional rights under 42 U.S.C. § 1983; and (5) Monell liability under 42 U.S.C. § 1983. (See Complaints.) The Coleman Complaint also alleges a sixth claim for violation of Jocelyne right to familial association with Coleman under the Fourteenth Amendment. (Coleman Compl.)

Defendants filed their motions on May 11, 2026. (Consolidation Motion; Coleman MJP; Soto MJP.) The plaintiffs in Coleman filed their opposition to the Consolidation Motion on May 26, 2026, and their opposition to the Coleman MJP the same day. ("Consolidation Opp'n," Coleman Dkt. No. 85; "Coleman MJP Opp'n," Coleman Dkt. No. 86.) The plaintiff in Soto filed his opposition to the Soto MJP on May 26, 2026. ("Soto MJP Opp'n," Soto Dkt. No. 71.) Defendants filed all of their replies on June 8, 2026. ("Consolidation Reply," Coleman Dkt. No. 89; "Coleman MJP Reply," Coleman Dkt. No. 90; "Soto MJP Reply," Soto Dkt. No. 73.)

# II. FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of these motions. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). The Court addresses only the facts relevant to the determination of these motions.

In the early 2000s, Plaintiffs Coleman and Soto were tried and convicted for the murder of Jose Robles. (Coleman Compl. ¶¶ 66-67.) Plaintiffs contend that they were prosecuted and convicted as a result of Defendants' misconduct. (Id. ¶ 68.) In 2024, Coleman's and Soto's convictions were vacated by the Superior Court of California for the County of Los Angeles and they were declared factually innocent. (Id. ¶ 70.)

Plaintiffs allege that during the time relevant to their wrongful arrests, prosecutions, and convictions, LASD condoned and cultivated a culture of impunity that led to Plaintiffs' wrongful convictions. (Id. ¶ 71.) In particular, Plaintiffs allege that LASD condoned and tolerated gangs of sheriff's deputies that organized outside of the agency's hierarchy, which resulted in LASD abandoning its responsibility of supervising deputies. (Id. ¶ 72.) These gangs operated in the Lennox Station that was responsible for investigating Plaintiffs' case, the Sheriff and his delegees

---

[1] The Court's reference to Jocelyne by her first name is not intended disrespectfully, and is used only because the Court's references to "Coleman" point to Jofama Coleman.

knew that these gangs were prevalent, and that these gangs shared a philosophy of violating residents' rights to try and secure convictions.  (Id. ¶¶ 79, 85.)

LASD and LA County had a policy and practice of fabricating and suppressing evidence from criminal suspects, and of tolerating and allowing such actions by its deputies.  (Id. ¶ 96.) Plaintiffs offer 15 examples of evidence-related misconduct occurring between 1989 and 2023 connected to LASD.  (Id. ¶ 97.)  LASD and the County of Los Angeles also had a policy and practice of training officers to commit misconduct and to seek convictions even if it meant violating residents' rights.  (Id. ¶ 101.)  LASD allowed deputies to be trained in improper and unconstitutional policing.  (Id. ¶ 102.)  LASD's officers recognized that the department would not discipline them for misconduct or would administer only minimal discipline, and the department's policy was to cover up misconduct.  (Id. ¶ 105.)

LASD also chose to allow deputies to improperly influence eyewitnesses, including feeding information to those witnesses to skew their identifications to identify deputies' preferred suspects.  (Id. ¶ 121.)  LASD chose not to train its deputies to provide exculpatory eyewitness identification information to prosecutors.  (Id. ¶ 122.)  LASD allowed homicide detective to operate with effectively no supervision, contributing to improper eyewitness procedures, suppression of evidence, and fabrication of evidence.  (Id. ¶ 124.)

Jocelyne was born in 2004, the year Coleman was wrongfully arrested and prosecuted as a result of Defendants' actions.  (Id. ¶ 129.)  Because of Defendants' misconduct, Jocelyne was robbed of her father and was unable to share birthdays, holidays, graduations, and daily life with her father.  (Id. ¶ 130.)  Her contact with him was limited to jail and prison visits and phone calls. (Id.)

## III. LEGAL STANDARD

### A.  Motion to Consolidate

Federal Rule of Civil Procedure 42(a) provides: "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."  Fed. R. Civ. P. 42(a).  Actions, however, need not be identical prior to consolidation under Rule 42.  Takeda v. Turbodyne Techs., Inc., et al., 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (writing that Rule 42 does not "demand[] that the actions be identical before they may be consolidated").  In deciding whether to consolidate cases pending in the same district, a court has wide discretion.  In re Adams Apple, Inc., 829 F.2d 1484, 1487 (9th Cir. 1987) (noting that "consolidation is within the broad discretion of the district court").  A court should weigh "the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." Paxonet Communications, Inc. v. TranSwitch Corp., 303 F. Supp. 2d 1027, 1028 (N.D. Cal. 2003) (citation omitted).

//
//
//

**CIVIL MINUTES—GENERAL**

### B.  Motion for Judgment on the Pleadings Under Rule 12(c)

A motion for judgment on the pleadings under Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings.  For purposes of a Rule 12(c) motion, the non-moving party's allegations must be accepted as true, while the moving party's allegations that have been denied are assumed to be false.  Hal Roach, 896 F.2d at 1550.  In addition, the non-movant's allegations must be construed in his favor.  Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).  Judgment on the pleadings is proper when the moving party establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.  Hal Roach, 896 F.2d at 1550.

When granting a motion for judgment on the pleadings, a court should grant leave to amend if the complaint can be cured by additional factual allegations.  Somers v. Apple, Inc., 729 F.3d 953, 960 (9th Cir. 2013).  Still, "dismissal without leave to amend is proper if it is clear that the complaint [cannot] be saved by amendment."  Id. (citation omitted).

### C.  Monell Claims

Section 1983 creates a cause of action against any person who, while acting under color of state law, causes another to be deprived of a federally protected constitutional right.  42 U.S.C. § 1983.  Claims that law enforcement officers have used excessive force are generally Fourth Amendment claims, and are thus "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."  Graham v. Connor, 490 U.S. 386, 388 (1989).

Under Section 1983, however, "local governments are responsible only for 'their own illegal acts.'"  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)).  Vicarious liability does not attach.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-695 (1978)).  Under Monell, liability attaches to a municipality or other local government only where "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  436 U.S. at 692.

"In order to establish liability for governmental entities under Monell, a plaintiff must prove (1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotations omitted).  "Although a constitutional violation must result from 'official municipal policy,' such a policy need not be expressly adopted by a municipality. It is sufficient that the constitutional violation occurred pursuant to a 'longstanding practice or custom.'"  Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999) (internal citation omitted).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  A

claim may also be based on a "policy of inaction," including "failure to implement procedural safeguards to prevent constitutional violations"; but to make this showing, the plaintiff must show—in addition to a constitutional violation—that the policy of inaction amounted to "deliberate indifference" to the plaintiff's constitutional right. Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012); see also Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (an unconstitutional policy "can be one of action or inaction").

To state a failure to train claim, Plaintiff must allege that (1) he was deprived of a constitutional right, (2) the City had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the City properly trained those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007). A municipality's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Bd. of Cty. Comm'rs, 520 U.S. at 40. Thus, Plaintiffs may point to "a pattern of tortious conduct" by employees as evidence that a regime of inadequate training was the "moving force" behind their injuries. Id. at 407-08.

## IV. DISCUSSION

### A. Motion to Consolidate

The Court finds that Coleman and Soto, both pending before this Court, should be consolidated. These two cases involve substantially common questions of fact and law, allege virtually identical claims, and involve almost entirely the same Defendants. (Consolidation Mot. at 3-5.) Consolidation of these actions therefore serves the interests of efficiency and judicial economy, as it will reduce duplication of pretrial proceedings, expedite those proceedings, and minimize the expenditure of time and money for all parties. See Kamakahi v. Am. Soc'y for Reproductive Med., 2012 WL 892163, at *1 (N.D. Cal. Mar. 14, 2012) ("The Court finds that consolidation will serve the interests of efficiency and judicial economy."). Moreover, "factors that counsel against consolidation, such as differing trial dates or stages of discovery, are not present here." In re Oreck Corp. Halo Vacuum & Air Purifiers Mkt. & Sales Practices Litig., 282 F.R.D. 486, 490 (C.D. Cal. 2012). In fact, the parties are proceeding with the same pretrial deadlines and have already agreed to proceed jointly for discovery. (See Coleman Dkt. and Soto Dkt.; Consolidation Opp'n at 2.) While the Coleman plaintiffs emphasize that it is too soon to know if consolidation for trial makes sense, the Court finds that pretrial proceedings will be aided by consolidation, and the Court can always bifurcate the trial in these actions if that becomes necessary. That trial may eventually need to be bifurcated does not undermine the fact that pretrial proceedings will be simplified and expedited by consolidating these actions. As such, the Court **ORDERS** that these cases be consolidated.
//
//
//

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk mg

**B.  Motions for Judgment on the Pleadings**

The Coleman MJP and Soto MJP ("MJPs") raise the same arguments for judgment on the pleadings as to Plaintiffs' fifth causes of action, for Monell liability.  The Coleman MJP also argues that the Coleman Plaintiffs' sixth claim on Jocelyne's behalf must be decided in Defendants' favor.

With respect to the Monell claims, the Court finds that Defendants' MJPs are untimely.  The Court's initial scheduling order required amended pleadings to be filed by July 28, 2025.  (Coleman Dkt. No. 61; Soto Dkt. No. 52.)  While the Court later amended the scheduling order to extend the discovery cut-off and other pretrial dates, the Court did not extend the time for amending pleadings, which passed more than 11 months ago.  (Coleman Dkt. No. 74; Soto Dkt. No. 61.)  Now, roughly a year-and-a-half into this case, and nearly a year after the deadline for amending pleadings, Defendants for the first time contest the sufficiency of Plaintiffs' pleadings.  Defendants did not file a motion to dismiss nor file this motion before the start of discovery or before learning the scope of discovery Plaintiffs seek on the Monell claims.  Rather, Defendants appear to raise these MJPs essentially to avoid normal discovery proceedings on the Monell claims.

Rule 12(c) offers the following timeline for motions arising under this rule: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. Pro. 12(c).  Despite the fact that trial is not scheduled until April 27, 2027, granting Defendants' MJPs at this stage would delay trial.  This is because the Court would be inclined, in the event that it granted the MJPs, to permit Plaintiffs the opportunity to amend their Monell claims.  This would require further extending the dates in the initial and amended scheduling orders to permit further amendment of pleadings, possible further litigation on those pleadings—for example a motion to dismiss or another motion for judgment on the pleadings— and an associated extension of the trial deadline.  This is especially the case where granting the MJPs would not dispose of the vast majority of the claims in the case, so even if Defendants were eventually successful in getting Plaintiffs' Monell claims dismissed with prejudice in a future motion, such litigation would likely delay the timeline for the parties to move for summary judgment on the remaining claims.  Had Defendants sought to move for judgment on the pleadings months ago, before discovery began in earnest and much further in advance of various case deadlines, such extensions may have been largely unnecessary.  But by waiting until this stage, granting Defendants' MJPs would necessitate continuance of trial in contravention of Rule 12(c).

The Court also notes that Defendants are not without recourse for their concerns about discovery related to the Monell claims.  The parties are already litigating issues regarding the scope and nature of Plaintiffs' discovery requests before the assigned Magistrate Judge.  If Defendants are concerned with Plaintiffs' requests, the proper place to adjudicate those issues is in discovery proceedings.  The Court will not reward Defendants' decision to wait to raise issues with the Monell claims until Defendants decided they didn't like how discovery was proceeding on those claims.  While motions for judgment on the pleadings can reduce the number of issues

---

that must be addressed in discovery, now, after discovery has actually begun, after the deadline for amendment has passed, and on a claim without any prior indication that Defendants had concerns about the claim's sufficiency, the Court considers discovery litigation to be a more appropriate forum for resolving such issues.

These same considerations also counsel the Court to reject the Coleman MJP's request to grant judgment on the pleadings as to Jocelyne's claim for a violation of her right to familial association. Additionally, the Court notes that Defendants are essentially asking this Court to disagree with established Ninth Circuit precedent to reject Jocelyne's claim, which this Court cannot and will not do. Defendants argue that the origination of the claim Jocelyne raises is Smith v. City of Fontana, 818 F.2d 1411, 1417–20 (9th Cir. 1987), which Defendants argue was overturned by Washington v. Glucksberg, 521 U.S. 702 (1997). (Coleman MJP at 14.) But as the Ninth Circuit reiterated in Lemire v. California Dep't of Corr. & Rehab., more than 15 years after Glucksberg was decided, "children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their . . . parent through official conduct." 726 F.3d 1062, 1075 (9th Cir. 2013). Smith is the law in this Circuit, and Lemire demonstrates that the Ninth Circuit's view is that Glucksberg did not change that. That is the law this Court will follow.

Jocelyne's claim for violation of her right to familial association under the Fourteenth Amendment is sufficiently pled. She alleges that Defendants knew or should have known she had a constitutionally protected liberty interest in companionship with her father, she suffered a loss of liberty for nearly twenty years while her father was incarcerated due to Defendants' conduct, and therefore suffered damages. (Coleman Compl. ¶¶ 184-187.) The allegation that Defendants acted deliberately in their misconduct toward Coleman is sufficient to sustain Jocelyne's claim that is a direct consequence of that alleged conduct. Moreover, the Court finds ridiculous Defendants' assertion that because Coleman was incarcerated while Jocelyne was a child *as a result of Defendant's alleged misconduct*, she cannot allege sufficient contact with Coleman to assert a Smith claim. Defendants cannot avoid Jocelyne's claim by contending that, allegedly by virtue of their conduct, she did not have a sufficient relationship with her father. That is the entire point of her claim.

As such, the Court **DENIES** the MJPs in their entirety.

## V.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the Consolidation Motion is **GRANTED** and the cases are **CONSOLIDATED**. Any future filings should be made under the low-numbered case, EDCV 24-2685 JGB (DTBx). The Court also **DENIES** the Soto MJP and the Coleman MJP. The July 13, 2026, and July 22, 2026, hearings are **VACATED**.

**IT IS SO ORDERED.**

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk mg